UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AFP MANUFACTURING CORPORATION,

                 Plaintiff,

     – against –

AFP IMAGING CORPORATION, BIOWAVE
INNOVATIONS LLC, and R. SCOTT JONES,

           Defendants.

Civil Action No. 7:17-cv-03292-NSR

---

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

YANKWITT LLP
140 Grand Street, Suite 501
White Plains, New York 10601
Tel.:  (914) 686-1500
Fax:  (914) 801-5930
*Counsel for Plaintiff*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................... 1

statement of relevant facts ......................................................................... 3

    A.   Plaintiff Purchases Imaging Following Extensive Due Diligence ................................. 3

    B.   Defendants' Persistent and Ongoing Fraud and Contractual Misconduct ...................... 5

    C.   The Instant Action ................................................................................ 6

STANDARD OF REVIEW .......................................................................... 6

LEGAL ARGUMENT ................................................................................ 7

    I.     PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT ............................. 7

         A.  Plaintiff Sufficiently Alleges a Breach of the Representations and
            Warranties to Provide Truthful, Fair, Accurate and Complete Financial Data ......... 8

         B.  Plaintiff Sufficiently Alleges a Breach of the Obligation to Change
            Imaging's Corporate Name ................................................................ 10

    II.    THE FRAUD CLAIM IS SUFFICIENTLY PLED ..................................... 11

    III.   PLAINTIFF IS PERMITTED TO MAINTAIN A CLAIM FOR UNJUST
          ENRICHMENT ............................................................................ 15

CONCLUSION ..................................................................................... 16

i

# TABLE OF AUTHORITIES

*Cases*

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC,*
No. 01 Civ. 11448, 2005 WL 2385854 (S.D.N.Y. Sept. 26, 2005) ........................................... 12

*Amusement Indus., Inc. v. Stern,*
786 F. Supp. 2d 758 (S.D.N.Y. 2011) .................................................................................... 12

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.,*
448 F.3d 573 (2d Cir. 2006) ................................................................................................. 15

*Botterbusch v. Preussag Int'l Steel Corp.,*
271 Ga. App. 190, 609 S.E.2d 141 (2004) ............................................................................ 11

*Burton v. Iyogi, Inc.,*
No. 13–cv–6926 (DAB), 2015 WL 4385665 (S.D.N.Y. March 16, 2015) ................................. 15

*Clark-Fitzpatrick, Inc. v. Long Island R. Co.,*
70 N.Y.2d 382 (1987) .......................................................................................................... 15

*DeLong Equip. Co. v. Washington Mills Abrasive Co.,*
887 F.2d 1499 (11th Cir. 1989) ............................................................................................ 13

*Faulkner v. Beer,*
463 F.3d 130 (2d Cir. 2006) ................................................................................................... 6

*Glidepath Holding B.V. v. Spherion Corp.,*
590 F. Supp. 2d 435 (S.D.N.Y. 2007) ............................................................................. 14, 15

*Hishon v. King & Spalding,*
467 U.S. 69 (1984) ................................................................................................................. 6

*JP Morgan Chase Bank v. Winnick,*
350 F. Supp. 2d 393 (S.D.N.Y. 2004) ................................................................................... 12

*Kleinman v. Elan Corp., plc,*
706 F.3d 145 (2d Cir. 2013) .............................................................................................. 7, 10

*Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie,*
784 F.3d 78 (2d Cir. 2015) ................................................................................................... 11

*Minerals & Metals Corp. v. Holme,*
35 A.D.3d 93 (N.Y. App. Div. 1st Dep't 2006) ...................................................................... 14

*Nat'l Fire Ins. Co. of Hartford v. Thrasher Contracting, LLC,*
142 F. Supp. 3d 1309 (N.D. Ga. 2015) ................................................................. 7

*Nebo Ventures, LLC v. NovaPro Risk Sols., L.P.,*
324 Ga. App. 836, 752 S.E.2d 18 (2013) ............................................................. 12

*New Paradigm Software Corp. v. New Era of Networks, Inc.,*
107 F. Supp. 2d 325 (S.D.N.Y. 2000) .............................................................. 15, 16

*Ritchie v. N. Leasing Sys., Inc.,*
14 F. Supp. 3d. 229 (S.D.N.Y. 2014) ................................................................. 10

*UST Private Equity Inv'rs. Fund, Inc. v. Salomon Smith Barney,*
288 A.D.2d 87 (N.Y. App. Div. 1st Dep't 2001) ................................................ 14

*Yale M. Fishman 1998 Ins. Trust v. Philadelphia Financial Life Assurance Co.,*
No. 11-cv-1283, 2016 U.S. Dist. LEXIS 58862 (S.D.N.Y. May 3, 2016) ......... 15-16

### **Rules**

Fed. R. Civ. P. 8(e)(2) ........................................................................................ 15

Fed. R. Civ. P. 12(b)(6) ................................................................................ Passim

Plaintiff AFP Manufacturing Corporation ("Plaintiff"), by and through its undersigned counsel, respectfully submits this memorandum of law in opposition to defendants AFP Imaging Corporation's ("Imaging"), Biowave Innovations LLC's ("Biowave"), and R. Scott Jones' ("Jones," and collectively, "Defendants") Motion to Dismiss the Complaint.

## PRELIMINARY STATEMENT

This action arises out of Defendants' egregious and fraudulent misrepresentations to Plaintiff and its principal owners, Craig and Susanna Brummer ("the "Brummers"), in connection with Plaintiff's 2016 purchase of the assets of Imaging, a manufacturer of x-ray film-processing equipment. Specifically, and in order to induce Plaintiff to consummate the transaction, Defendants provided the Brummers with documentation purporting to show that Imaging was generating sufficient near-term cash flow to enable the Brummers to develop the company into a platform for the sale of high-tech medical devices.

In reliance on Defendants' representations and the documentation provided during due diligence, Plaintiff purchased Imaging's assets for $1 million pursuant to an Asset Purchase Agreement (the "APA") executed among Imaging, BioWave, and Plaintiff on June 17, 2016. After Plaintiff took possession, however, the Brummers quickly discovered that Defendants' information and documentation had been falsified in virtually every material respect. To make matters worse, Defendants' deception continued in the post-sale period, through falsified inventory accounting, stonewalling by legacy employees engineered by Defendants, and attempts to delete electronic files evidencing the fraud, all of which hindered Plaintiff's ability to detect and remedy the many problems plaguing the business. As a predictable, and intended, consequence of this campaign of fraud, Plaintiff has seen the value of its investment destroyed.

Accordingly, Plaintiff commenced this action seeking monetary damages of at least $1.85 million, plus its attorneys' fees, for (a) breach of contract, (b) fraud and (c) unjust enrichment.

{00077543 3 }

Defendants now move to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).  The crux of their motion is the absurd proposition that Defendants are not liable for their bald faces lies and falsehoods because Plaintiff should not have believed anything Defendants said or accepted the truth of anything Defendants provided either before or after the purchase.  In short, Defendants' motion is nothing more than a desperate and frivolous attempt to avoid responsibility for their own intentional wrongdoing.  For the reasons set forth below, Plaintiff's causes of action are well pled and the Court should deny Defendants' motion in its entirety.

First, Defendants attempt to avoid contractual liability by claiming that they only needed to use best efforts in connection with the provision of information to Plaintiff and then making the preposterous assertion that providing intentionally falsified documents constitutes best efforts as a matter of law.  Defendants' argument should be rejected, however, because it misconstrues the clear language of the APA's representations and warranties, and is otherwise unsupported by the allegations in the Complaint.

Second, with respect to the fraud claim, Defendants contend that Plaintiff's reliance on Defendants' falsified information and documentation was not reasonable because Plaintiff should have been suspicious of Defendants' fraud and conducted further due diligence prior to purchase. This argument is also unsupported by the allegations in the Complaint and applicable law. Indeed, Defendants do not (and cannot) cite a single case imposing a duty of inquiry on a plaintiff who engaged in a due diligence process in which the documentation provided by defendant was itself falsified.

Third, Defendants' claim that the unjust enrichment claim should be dismissed because it is duplicative of the contract claim is simply wrong.  The federal courts in New York have held expressly that unjust enrichment can be pleaded in the alternative and is not subject to dismissal

2

on that ground on a motion to dismiss.

## STATEMENT OF RELEVANT FACTS

The following allegations, which the Court must take as true and accord every favorable inference, are drawn from the Complaint.

**A.      Plaintiff Purchases Imaging Following Extensive Due Diligence**

 Imaging was founded in 1978 as a manufacturer of x-ray film processing equipment for medical, dental, veterinary, and industrial uses.  (*See* Declaration of Dina L. Hamerman, dated as of the date herewith ("Hamerman Declaration"), Exhibit A ¶ 14.)

In early 2016, the Brummers entered into negotiations with Jones – who is Imaging's CEO and the principal member of Imaging's majority owner, BioWave – to purchase virtually all of Imaging's assets.  (*Id.* ¶ 15.)  Imaging's principal value to an acquirer lay in its ability to generate cash flow in the near term, in order to fund operations while the company was developed into a platform for the sale of current, high-tech medical devices.  (*Id.* ¶ 17.)

On June 10, 2016, the parties executed the APA, which provided that Manufacturing would purchase Imaging's assets[1] effective June 27, 2016 for $1 million, in the form of $850,000 cash at closing and a promissory note for $150,000 payable to Imaging over ten years, with payments to begin 24 months after closing.  (*Id.* ¶ 19.)

The APA entitled Plaintiff to perform a due-diligence review before the sale took effect, including but not limited to a review of:  (a) Imaging's financial documents and tax returns; (b)

---

[1]  Contrary to Defendants' characterization of the sale as a minor carve-out from Imaging's business, the APA provided for the purchase of Imaging's entire film processing business.  The only items carved out from the sale were the cash on hand, accounts receivables and inter company receivables from other divisions of Imaging as well as Imaging's rights to a pending litigation claim in *AFP Imaging Corp. v. American Dicing, Inc.*, Index No. 51706/2014 (N.Y Sup. Ct., Westchester County) (the "*American Dicing*" litigation).  (*See* Hamerman Decl., Exhibit B § 1.)

complete listings and valuations of Imaging's fixed assets and inventory; (c) Imaging's supplier and customer invoices; (d) Imaging's labor input costs; and (e) Imaging's aged accounts payable and receivable.  (*Id.* ¶ 20.)

Accordingly, in the course of the due diligence, the Brummers reviewed, among other things, Imaging's balance sheets, income statements, aging statements for accounts payable and receivable, tax filings, and – critically – data purporting to detail Imaging's materials costs, pricing practices, inventory holdings, and other key financial information, which Jones claimed to have drawn directly from the company's internal QuickBooks database.  (*Id.* ¶ 21.)

In the APA, Imaging and BioWave provided covenants, representations and warranties that, *inter alia*:

> a. "All information, documents and copies of documents provided to Purchaser pursuant hereto, including those provided in connection with Purchaser's due diligence request, are, to the best of Seller's knowledge and ability to reasonably construct proforma [sic] financials, true, complete and accurate in all material respects" (Hamerman Decl., Ex. B § 17(u);

> b. "All Seller financial statements provided or to be provided to Purchaser in connection with this transaction were prepared consistently from period to period and fairly present, to the best of Seller's knowledge, the financial position and results of operations of Seller's Processor Business" (*id.* § 17(j); and

> c. "Until the Closing or earlier termination of the [APA], except with the Purchaser's written consent, Seller will conduct its business only in the ordinary course . . . , and will not . . . enter into or assume any contractual commitments other than in the ordinary course of business."  (*Id.* § 7.)

(Hamerman Decl., Ex. A ¶ 22.)

Defendants also agreed that Imaging would "cause its corporate name to change within 180 days of closing, or such time as reasonably practicable thereafter, so that it will no longer contain the name 'AFP Imaging' or anything substantially similar."[2]  (*Id.* ¶ 23.)

The APA further provides that "[a]ll terms and conditions of this Agreement shall not be merged in the Closing or in the delivery of the Bill of Sale,or any other documents, but shall survive the Closing and delivery of those documents."  (Hamerman Decl., Ex. B § 20.)

Finally, the APA entitled the prevailing party to recover its attorneys' fees in any litigation arising from or relating to the APA.  (Hamerman Decl., Ex. A ¶ 24; Ex. B § 33.)

As set forth in the Complaint, in reliance on the documents, information, covenants, representations, and warranties provided by Defendants, Plaintiff completed the purchase and took possession of the Imaging assets on June 27, 2016, financing the cash portion of the purchase price by taking out an $850,000 Wells Fargo veterans' loan backed by the U.S. Small Business Administration ("SBA").  (*Id.* ¶ 25.)

## B.    Defendants' Persistent and Ongoing Fraud and Contractual Misconduct

During the sale process, Defendants provided the Brummers with extensive financial documentation purporting to show that Imaging was still generating enough sales and profit to serve as a viable platform for the introduction of a new generation of high-tech products.  (*Id.* ¶ 26.)  As detailed at length in the Complaint, however, the documentation provided by Defendants was knowingly and intentionally false in multiple respects so as to induce Plaintiff to enter into the APA, including but not limited to:  (a) drastically understated materials costs based on false Bills of Materials (*id.* ¶¶ 28-40); (b) enormously overstated profits based on false sales

---

[2]  Section 1 of the APA contained a limited carve out permitting Imaging to use the trademark "AFP Imaging Corporation," *solely* in furtherance of its claims in the carved-out litigation.  (*See* Hamerman Decl., Ex. B § 1.)

discount information (*id.* ¶¶ 41-43); (c) materially misstated supplier payment terms (*id.* ¶¶ 44-48); and (d) materially misstated inventory levels based on false balance sheets and inventory data.  (*Id.* ¶¶ 49-54.)  In addition, Defendants conducted business outside the ordinary course in the pre-purchase period in breach of the APA.  (*Id.* ¶¶ 36-39)

As further set forth in the Complaint, Defendants' fraudulent and otherwise wrongful conduct continued after the sale as well.  (*Id.* ¶ 55.)  That wrongful conduct included:  (a) falsifying a written recount of Imaging's physical inventory (*id.* ¶¶ 55-63); (b) deleting historical account and other operations information from Imaging's server (*id.* ¶¶ 64-69); and (c) offering legacy employees a financial incentive to maintain a gag order on information concerning Jones, Imaging or the asset sale.  (*Id.* ¶¶ 70-73.)  Defendants also committed a further breach of the APA by failing to change Imaging's corporate names within 180 days of the transaction's closing.  (*Id.* ¶ 86.)

## C.     The Instant Action

As set forth in the Complaint, Plaintiff has suffered significant monetary damages as a result of Defendants' breaches of the APA and tortious conduct.  Accordingly, Plaintiff commenced this action asserting claims for (a) breach of contract, (b) fraud and (c) unjust enrichment.  (*See id.*, First through Third Causes of Action.)   In addition, Plaintiff seeks attorneys' fees as expressly provided for in the APA.  (*See id.*, Fourth Cause of Action.)

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, the well-pleaded factual allegations of the complaint must be regarded as true and all reasonable inferences must be drawn in plaintiff's favor.  *See Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006).  The party moving for dismissal has the burden of persuading the court beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle the plaintiff to relief.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73

(1984).  The motion must be denied if the complaint states any plausible claim to relief.  *See Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 742 F.3d 37, 40 (2d Cir. 2014).

In deciding the motion, the Court considers facts stated on the face of the complaint, documents appended to the complaint or documents incorporated by reference.  *Kleinman v. Elan Corp., plc,* 706 F.3d 145, 152 (2d Cir. 2013).  Here, the APA is incorporated by reference into the Complaint and, accordingly, Plaintiff agrees that it is properly reviewed by the Court on this motion.  (*See* Mem. of Law in Supp. of Defs. Motion to Dismiss ("Defs. Br.") at 6-7.)

## LEGAL ARGUMENT

## I.   PLAINTIFF STATES A CLAIM FOR BREACH OF CONTRACT[3]

To state a claim for breach of contract under Georgia law, which is applicable pursuant to the APA, Plaintiff need only allege:  (1) a valid contract; (2) material breach of its terms; and (3) resultant damages to a party having the right to complain that contract has been broken.  *Nat'l Fire Ins. Co. of Hartford v. Thrasher Contracting, LLC*, 142 F. Supp. 3d 1309, 1312 (N.D. Ga. 2015).

The Complaint clearly alleges all three elements:  (1) the APA is a valid contract; (2) Imaging and BioWave materially breached numerous material representations in the APA; and (3) as a result of those breaches, Plaintiff has been damaged.  (*See generally* Hamerman Decl., Ex. A, First Cause of Action.)  More specifically, Imaging and BioWave breached at least four separate provisions of the APA:  (1) the representation that all information and documents provided during due diligence was true, complete and accurate in all material respects (*id.* ¶¶ 81-

---

[3]  Plaintiff agrees with Defendants that the APA is incorporated by reference into the Complaint and that the breach of contract claim is governed by Georgia law pursuant to the APA.  (*See* Defs. Br. at 5-7.)  Plaintiff further agrees that there is no conflict between Georgia and New York law with respect to the contract issues presented in this motion.  (*See id.* at 5.)

82); (2) the representation that the financial statements provided to Plaintiff "fairly present" the financial position and operational results of Imaging's processor business (*id.*); (3) the representation that Imaging had not conducted any business outside the ordinary course in the pre-purchase period (*id.* ¶¶ 83-84); and (4) the contractual obligation to change Imaging's corporate name within 180 days of closing.  (*Id.* ¶¶ 85-86.)

As an initial matter, Defendants do not address the allegation that Imaging and BioWave breached the APA by engaging in business outside the ordinary course in the pre-sale period.  Thus, that claim must survive this motion to dismiss.

In their motion papers, Defendants make three principal arguments with respect to the remaining breaches.  First, they contend there was no breach of the representations concerning the provision of financial documents and information because Defendants were only required to use best efforts and make representations to the best of their knowledge.  (*See* Defs. Br. at 9-10.)  Second, they claim Imaging has not breached the name change provision because the APA provides that Imaging was permitted to use its trademark in furtherance of the *American Dicing* litigation.  (*See id.* at 10-11.)  Third, Defendants argue Plaintiff has not alleged damages with respect to Imaging's refusal to effectuate the name change.  (*See id.* at 11.)  For the reasons set forth below, none of these arguments has merit and the motion to dismiss the contract claim should be denied.

### A.    Plaintiff Sufficiently Alleges a Breach of the Representations and Warranties to Provide Truthful, Fair, Accurate and Complete Financial Data

Defendants claim they did not breach the APA because "Imaging was only required to use its 'best efforts' and makes representations to the 'best of Seller's knowledge,'" and so is not liable for "inaccuracies" in the financial documentation provided to Plaintiff.  (Defs. Br. at 10.)  This argument simply ignores the contractual language identified in the Complaint in support of

8

Plaintiff's breach of contract claim.  Thus, while Section 17(j) of the APA states that "Seller has made best efforts to properly allocate the Company's shared expenses . . .," it goes on to require Imaging and BioWave to prepare all financial statements "*consistently from period to period* and *fairly present*, to the best of Seller's knowledge, the financial position and results of operations [of the processing business] . . . ."  (Hamerman Decl., Ex. B § 17(j).  And, while Section 17(u) also references "best efforts" and "to the best of Seller's knowledge," it explicitly required Imaging and BioWave to "prepare financial statements *fairly and accurately* reflecting its historical experience with the [processing business]" and provide Plaintiff with information and documents that are "*true, complete and accurate in all material respects*."  (*Id.* § 17(u).)  In other words, and contrary to Defendants' meritless argument, Imaging and BioWave had a substantial contractual burden to use best efforts to present fair, true, complete and accurate financial information and documentation to Plaintiff.  As alleged in the Complaint, Imaging and BioWave utterly failed to fairly and accurately prepare and present financial statements, and provide true, complete and accurate information and documents because the documents and data they provided to Plaintiff were falsified and/or intentionally incomplete.  (*See* Hamerman Decl., Ex. A ¶¶ 26-54, 81-82.)  Based on those allegations, Plaintiff states a claim for breach of the APA.

Moreover, Defendants' implicit suggestion that proffering falsified documents was a mere inaccuracy that satisfied their obligation to use best efforts is preposterous, and it belies common sense to equate the two.  Based on the extensive and specific allegations in the Complaint concerning Defendants' misconduct during the due diligence process, there is simply no basis upon which to find that Imaging and BioWave used their "best efforts" to provide true, complete and accurate financial data to Plaintiff or to fairly represent Imaging's financial situation.  Therefore, Imaging and BioWave breached the APA and the Plaintiff's First Cause of

Action states a claim for relief.

Finally, and at a minimum, insofar as Defendants' arguments raise factual issues concerning the scope of the contract's representations and warranties and other obligations, the interplay between those provisions and the interpretation of contractual terms, those determinations are wholly inappropriate for resolution on a Rule 12(b) motion.  *See Ritchie v. N. Leasing Sys., Inc.*, 14 F. Supp. 3d 229, 238, 245 (S.D.N.Y. 2014) (denying motion to dismiss because factual issues are not appropriate for resolution on Rule 12(b)(6) motion).  Rather, the Court should deny the motion to dismiss the contract claim because Plaintiff has alleged sufficient and specific facts to sustain its breach of contract claim and those facts must be construed in Plaintiff's favor on this motion to dismiss.  *See Kleinman*, 706 F.3d at 152 (on motion to dismiss, plaintiff must allege sufficient facts to state a claim and court must construe those allegations in plaintiff's favor).

> **B.    Plaintiff Sufficiently Alleges a Breach of the Obligation to Change Imaging's Corporate Name**

With respect to Defendants' failure to change Imaging's corporate name, Defendants argue they did not breach the APA because the agreement permits Imaging to use its trademark in furtherance of its claims in the ongoing *American Dicing* litigation.  (*See* Defs. Br. at 10-11.) Once again, Defendants' reliance on selected, irrelevant contractual provisions is misplaced. The fact that Defendants were permitted to use the AFP Imaging Corporation *trademark* in the carved-out litigation under Section 1 of the APA does not eliminate the separate and independent obligation, at Section 14(b) to change Imaging's corporate name following the execution of the APA.  As Plaintiff sufficiently alleges a breach of the APA under Section 14(b), Defendants' motion to dismiss that claim should be denied.

Defendants also seek dismissal of Plaintiff's claim for breach of the name change provision on the ground that Plaintiff has not alleged damages sufficiently. This argument is wrong as a matter of law. The Second Circuit has expressly held that, at the pleading stage, a plaintiff need only allege it has suffered damages to withstand a Rule 12(b)(6) motion. *See Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015) (because nominal damages are always available for breach of contract, dismissal for failure to allege damages with specificity is improper).[4] Thus, while Plaintiff ultimately will need to prove damages, at this stage of the proceedings, the allegations in the Complaint are sufficient and Defendants' motion should be denied.

In sum, the Complaint sufficiently alleges multiple breaches of contract by Defendants. Accordingly, Defendants' motion to dismiss that claim should be denied. Furthermore, because Plaintiff has alleged viable breaches of the APA, Plaintiff's claim for attorneys' fees, which are expressly provided for in the APA, should be preserved as well.

## II.      THE FRAUD CLAIM IS SUFFICIENTLY PLED

The Complaint's Second Cause of Action states a claim for fraud against Defendants for knowingly and intentionally making materially false and misleading misrepresentations in the forms of financial documents and information to induce Plaintiff to purchase Imaging's assets. (*See* Hamerman Decl., Ex. A ¶¶ 26-54.) In addition, the Complaint alleges that Defendants fraud continued in the post-sale period as part of a scheme to cover-up their fraudulent inducement. (*See id.* ¶¶ 55-73.)

---

[4]   While *Luitpold* applied New York law, Georgia law is the same: "[I]n every breach of contract the injured party has a right to damages, and if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." *Botterbusch v. Preussag Int'l Steel Corp.*, 271 Ga. App. 190, 195(1)(b), 609 S.E.2d 141 (2004) (citation and punctuation omitted). Accordingly, the Second Circuit's holding in *Luitpold* applies in this case.

11

To state a claim for common law fraud in both New York and Georgia, Plaintiff must allege that: (1) Defendants made a representation as to a material fact; (2) such representation was false; (3) Defendants intended to deceive Plaintiff; (4) Plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance Plaintiff sustained pecuniary loss. *Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 772 (S.D.N.Y. 2011); *Nebo Ventures, LLC v. NovaPro Risk Sols., L.P.*, 324 Ga. App. 836, 838–839, 752 S.E.2d 18 (2013).[5]

Defendants do not dispute that Plaintiff has sufficiently alleged Defendants made false representations of fact with the intent to deceive Plaintiff or that Plaintiff suffered damages as a result of its reliance on those misrepresentations. Rather, the crux of Defendants' argument is that Plaintiff's reliance was purportedly unreasonable because Plaintiff did not conduct independent due diligence. (*See* Defs. Br. at 11.) This claim is contrary to the allegations in the Complaint, has no basis in the law and should be rejected.

As a threshold matter, the determination of whether Plaintiff's reliance was reasonable is a highly fact-intensive inquiry that cannot be decided on a motion to dismiss. *See AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 Civ. 11448, 2005 WL 2385854, at *9 n. 5 (S.D.N.Y. Sept. 26, 2005). Indeed, in *JP Morgan Chase Bank v. Winnick*, 350 F. Supp. 2d 393 (S.D.N.Y. 2004) – a case relied upon by Defendants – the Court declined to dismiss a fraud claim on a Rule 12(b)(6) motion, finding the plaintiff need only allege the elements of a fraud

---

[5]   In their opposition papers, Defendants argue that New York law should apply to Plaintiff's tort claims and that there is no conflict between Georgia and New York law with respect to a claim of fraud. (*See* Defs. Br. at 5.) Plaintiff does not dispute either contention.

claim. *See id.* at 398[6]; *see also DeLong Equip. Co. v. Washington Mills Abrasive Co.*, 887 F.2d 1499, 1519 (11th Cir. 1989) (reversing grant of summary judgment because whether plaintiff exercised due diligence is a jury question).

Next, as the cases relied upon by Defendants make clear, the independent due diligence requirement only applies when suspicious circumstances suggest further investigation is required. (*See* Defs. Br. at 13-14.)  While Defendants make the bald-faced assertion that a duty to inquire was triggered in this case, there is nothing in the Complaint to support a finding of suspicious circumstances nor can Defendants identify any such allegation.  To the contrary, the thrust of Plaintiff's fraud in the inducement claim is that Defendants provided financial documentation that appeared completely legitimate so as not to raise any suspicion on the part of Plaintiff.  Viewing the allegations in the Complaint in the manner most favorable to Plaintiff, therefore, there is no basis upon which to find suspicious circumstances and so no independent due diligence was required.[7]

Finally, even if Plaintiff had a duty to inquire (which it did not), the Complaint makes crystal clear that Plaintiff *did* engage in due diligence prior to purchasing Imaging.  (*See, e.g.,* Hamerman Decl., Ex. A ¶¶ 20-21, 26-27, 28, 41, 49-50.)  Thus, Plaintiff requested, received and reviewed numerous financial documents and extensive financial information.  (*See id.*)  The

---

[6]  The Court went on to address certain fraud claims on the merits on a motion for summary judgment based on the argument that the plaintiff had access to information relevant to the alleged fraud but failed to take advantage of that access.  *See id.* at 406.  As discussed below, that principle is inapplicable to the instant case because Plaintiff participated extensively in the due diligence process but was duped by Defendants' provision of falsified documents and information.

[7]  Perhaps recognizing that the Complaint's allegations do not suggest, much less establish, suspicious circumstances, Defendants are left to argue that the fact the APA was a carve-out transaction is *de facto* a suspicious circumstance.  (*See* Defs. Br. at 15.)  Defendants offer no support for this ridiculous proposition and the Court should reject it out of hand.

problem, as Defendants well know, is that the documentation and information was falsified, thereby preventing Plaintiff from discovering the true picture of Imaging's finances and fraudulently inducing Plaintiff into consummating the transaction.[8]  In their moving papers, Defendants do not cite a single case dismissing a fraud claim on a motion to dismiss where the fraud claim was predicated on the defendant's provision of falsified documents during the plaintiff's exercise of due diligence.[9]  The Court should not do so here.  *See Glidepath Holding B.V. v. Spherion Corp.*, 590 F.Supp.2d 435, 459 (S.D.N.Y. 2007) (denying motion to dismiss fraud claim where plaintiffs performed due diligence but were "thwarted" by defendant's misrepresentations).

In sum, having falsified numerous documents during due diligence and then attempted to cover up that fraud after the sale,[10] Defendants cannot avoid liability by blaming Plaintiff for

[8]  Defendants also make the nonsensical claim that they are not liable for fraud because Plaintiff "solely relied on representations made by Defendants." (Defs. Br. at 15.)  This statement is flatly contradicted by the Complaint's repeated allegations that Imaging requested and was provided *documents* – which were themselves falsified. (*See e.g.,* Hamerman Decl., Ex. A ¶¶ 30, 41, 44, 49, 50.)

[9]  The cases relied upon by Defendants principally involved plaintiffs who did not conduct *any* due diligence and are therefore inapposite.  *See, e.g., UST Private Equity Inv'rs. Fund, Inc. v. Salomon Smith Barney*, 288 A.D.2d 87, 88 (N.Y. App. Div. 1st Dep't 2001) (dismissing fraud claim where investor exclusively relied upon offering memorandum and did not request additional information or documentation).  Similarly, Defendants rely on cases holding a fraud claim will not lie where a plaintiff fails to insist on a prophylactic contractual protection against misrepresentations.  *See Glob. Minerals & Metals Corp. v. Holme*, 35 A.D.3d 93, 101 (N.Y. App. Div. 1st Dep't 2006) (affirming summary judgment dismissal of fraud claim where plaintiff, on clear notice of fraud, failed to include representation in agreement concerning truth and accuracy of representations.)  As set forth above, Plaintiff obtained that supposed protection in the form of the numerous representations and warranties in the APA.

[10]  Defendants make much of an email referenced in the Complaint in which Plaintiff confirmed following a review of inventory that the total inventory value met the minimum threshold required by the APA, claiming that email demonstrates Plaintiff's "cherry picking of facts and imputing a motive of bad faith." (Defs. Br. at 17.)  In fact, it is Defendants who are cherry-

failing to uncover Defendants' misconduct.  *See Glidepath*, 590 F.Supp.2d at 459-60.

Accordingly, the Court should deny Defendants' motion to dismiss the fraud claim.

## III.     PLAINTIFF IS PERMITTED TO MAINTAIN A CLAIM FOR UNJUST ENRICHMENT

Plaintiff's Third Cause of Action is for unjust enrichment.  Under New York law, to state

a claim of unjust enrichment, a plaintiff must establish three elements: (1) that the defendant

benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require

restitution.  *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448

F.3d 573, 586 (2d Cir. 2006).  As Defendants note, Georgia law is similar.

Defendants move to dismiss the unjust enrichment claim on the ground that it is

duplicative of Plaintiff's contract claim.  (*See* Defs. Br. at 17-18.)  Contrary to Defendants'

incorrect contention, the overwhelming majority of courts in this District permit Plaintiff to plead

unjust enrichment in the alternative under Fed. R. Civ. P. 8(e)(2), which gives a plaintiff the

absolute right to plead claims in the alternative.  *See Burton v. Iyogi, Inc.*, No. 13–cv–6926

(DAB), 2015 WL 4385665, at *11 (S.D.N.Y. March 16, 2015).  The cases relied upon by

Defendants are largely from the New York state courts, which take a different approach to

alternative pleading, and so are inapplicable to the instant motion.  (*See* Defs. Br. at 17-18.).[11]

---

picking as they completely ignore the subsequent allegations in the Complaint that Jones took the
physical inventory record from the inventory review and destroyed it thereby preventing Plaintiff
from determining the actual inventory on hand at the time of the sale as opposed to the purported
inventory claimed by Defendants.  (*See* Hamerman Decl., Ex. A ¶¶ 56-63.)  Moreover,
Defendants completely ignore the other well-pled allegations of a cover up, including, data
tampering and forced silence of legacy employees. (*See id.* ¶¶ 64-73.)

[11]  The two district court cases cited by Defendants rely exclusively on New York state court
decisions in dismissing alternative relief.  *See New Paradigm Software Corp. v. New Era of
Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) (relying on the New York Court of
Appeals' decision in *Clark-Fitzpatrick, Inc. v. Long Island R. Co.*, 70 N.Y.2d 382 (1987)); *Yale
M. Fishman 1998 Ins. Trust v. Philadelphia Financial Life Assurance Co.*, Docket No. 11-cv-

## <u>CONCLUSION</u>

For all of the reasons set forth above, Plaintiff respectfully requests the Court deny

Defendants' motion to dismiss in its entirety.

Dated:          White Plains, New York
                September 20, 2017

                                                    **YANKWITT LLP**

                                          By:   _Dina L. Hamerman_
                                                Dina L. Hamerman
                                                140 Grand Street, Suite 501
                                                White Plains, New York 10601
                                                Tel.:    (914) 686-1500
                                                Fax:    (914) 801-5930
                                                dina@yankwitt.com
                                                *Attorneys for Plaintiff*

---

1283, 2016 U.S. Dist. LEXIS 58862, at *37-38 (S.D.N.Y. May 3, 2016) (relying on the district court's decision in *New Paradigm Software*).  The Court should reject this minority view and instead hold that Plaintiff can maintain its unjust enrichment claim at the pleading stage.