UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

AFP MANUFACTURING CORPORATION,

        Plaintiff,

   vs.

AFP IMAGING CORPORATION,
BIOWAVE INNOVATIONS LLC,
and R. SCOTT JONES

          Defendants.

Civil Action No. 7:17-cv-03292-NSR

## REPLY TO PLAINTIFF'S OPPOSITION TO
## <u>MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Luigi Spadafora, Esq.  (NY No. 2366920)
Brian J. Palmeri, Esq.  (NY No. 456079)
Winget Spadafora @Schwartzberg, LLP
177 Broad Street, 10th Floor
Stamford, CT  06901
Tel:  (203) 328-1200
Fax: (203) 328-1212
Spadafora.L@wssllp.com
Palmeri.B@wssllp.com
*Attorneys for Defendants*

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................................ 1

II.   MANUFACTURING FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT .. 2

III.   MANUFACTURING'S FRAUD CLAIM IS NOT SUFFICIENTLY PLED..................... 5

IV.   MANUFACTURING'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE THE APA CONTROLS. ....................................................................................................................... 8

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) ..................................................... 8

*AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 Civ. 11448, 2005 WL 2385854, at \*9 n.5 (S.D.N.Y. Sept. 26, 2005) ........................................................................... 6

*Burton v. Iyogi*, Inc., 2015 U.S. Dist., LEXIS 33809 \*39 (S.D.N.Y., 13-CV-6926 (DAB), March 16, 2015) ..................................................................................................................................... 9

*Glidepath Holding B.V. v. Spherion Corp*, 590 F.Supp.2d 435, 459 (S.D.N.Y. 2007) .............. 7, 8

*Global Minerals and Metals Corp. v. Holme*, 35 AD3d 93, 824 N.Y.S.2d 210 (1st Dept. 2006) *lv denied* 8 NY3d 804, 863 N.E.2d 111, 831 N.Y.S.2d 106 (2007) ............................................... 7

*In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 305–06 (S.D.N.Y. 2009) ............. 8

*Kimmell v. Schaefer*, 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715 (1996).......................................... 6

*New Paradigm Software Corp. v New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000) ..................................................................................................................................... 9

*Ritchie v. N. Leasing Sys., Inc.* 14 F. Supp. 3d 229, 238, 245 (S.D.N.Y. 2014)............................ 4

*San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 814 (2d Cir. 1996).................................................................................................................... 8

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001) ............ 6

*TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274 (E.D. Pa. 2011) ... 9

*UST Private Equity Invs Fund v Salomon Smith Barney*, 288 AD2d 87, 88, 733 N.Y.S.2d 385 (1st Dep't 2001)...................................................................................................................... 7

The Defendants, AFP Imaging Corporation ("Imaging"), Biowave Innovations, LLC and R. Scott Jones (collectively, the "Defendants") hereby submit this Reply to Plaintiff's Opposition to Motion to Dismiss Plaintiff, AFP Manufacturing Corporation's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) as follows:

## I.     **INTRODUCTION**

As previously discussed, this case is simply Manufacturing's attempt to litigate their way out of a poor business decision and failure to properly understand the business it was purchasing based on supposed "representations" the Defendants made during to the subject transaction. Plaintiff simply labels the inaccuracies as "fraud" in order to distract the Court from the fact that inaccuracies were explicitly contemplated by the APA – the contract governing the transaction. Plaintiff's opposition is similar long on rhetoric but does not change the fact that Plaintiff's allegations are precluded by the explicit language of the contract.

Further, Plaintiff entered into this transaction *solely* based upon Defendants' alleged representations, despite Plaintiff's knowledge that this was an arm's length business transaction that was subject to particularly complex valuation difficulties extensively discussed by the parties and negotiated into the contract governing the deal. Plaintiff did not attempt to independently review or confirm any of the information Defendants' provided Plaintiff with regarding the transaction prior to purchase. Now, a year later, Plaintiff is attempting to back out of the deal by implying that Plaintiff was tricked into entering into this transaction when in fact, Plaintiff did not take reasonable precautions in order to protect itself in the transaction and now attempts to play the victim.

As demonstrated below, Plaintiff fails to demonstrate any misrepresentations by the Defendants that were not contemplated by the APA and the arguments in Manufacturing's response on the critical issues raised in the Defendants' motion either completely ignore controlling law or attempt to re-characterize the allegations from the complaint in order to avoid the application of controlling law. Manufacturing's efforts should be rejected and the case dismissed.

## II.  MANUFACTURING FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT

Manufacturing's Opposition to Defendant's Motion to Dismiss ("Opposition") largely misconstrues the provisions of the APA and the Defendants' actions that Manufacturing's claim for relief on the basis of a breach of contract require.

Manufacturing claims: "[Defendants] had clear contractual obligations under the APA to ensure, inter alia, that all documents and information disclosed in due diligence were true, complete and accurate in all material respects, and that all items of material importance to the business were included in the Purchased Assets." Compl. ¶ 81. Manufacturing further claims that Defendants had "contractual obligations under the APA to ensure … that all documents and information disclosed in due diligence were true, complete and accurate." Compl. ¶ 81. In reality, however, the APA provides only for the accuracy of information contained *within the APA itself*, and provides only that the Defendants would use best efforts to prepare accurate financial statements given the complexity of valuation in this transaction. The particular provisions of the APA illustrative of this point provide:

**§ 12(c) (emphasis added)**

> Seller and Seller's Majority Owner shall execute and/or deliver to Purchaser a certificate, in a form reasonably satisfactory to Purchaser, restating and

reaffirming the truth, accuracy, and completeness *of the covenants, representations and warranties* **contained in this Agreement**.

**§ 17(j) (emphasis added)**

Purchaser and Seller both recognize that this Asset Purchase is a Carve-Out from the Seller's Company and, as such, all financial statements have been prepared on a pro forma basis to support the transaction. **Seller has made best efforts to properly allocate the Company's shared expenses in a fair and accurate manner between the Processor Business and its other business units in order to reflect its historical experience with the Processor Business in the income statements and balance sheets. Purchaser has prepared its own business plan, contemplating the new company formed as a stand-alone entity and, as such, recognizes that economies of scale can possibly be lost as a result of the carve-out nature of the transaction.** All Seller financial statements provided or to be provided to Purchaser in connection with this transaction were prepared consistently from period to period and fairly present, to the best of Seller's knowledge, the financial position and results of operations of the Seller's Processor Business as a division of its Company, as the dates and for the periods, referred to therein.

**§ 17(u) (emphasis added)**

Subject to clause 17(j) Seller has made **best efforts** to prepare financial statements fairly and accurately reflecting its historical experience with the Processor Business as a Division of the Company. **To the best of Seller's knowledge, all representations and warranties contained in this Agreement are true, to the extent that proforma financials could reasonably be constructed as of the date of this Agreement, and at all times thereafter until the closing**. All information, documents, and copies of documents provided to Purchaser pursuant hereto, including those provided in connection with Purchaser's due diligence request are, to the best of Seller's knowledge and ability to reasonably construct proforma financials, true, complete and accurate in all material respects.

As such, there is no support for the absolute burden Manufacturing attempts to impose on Defendants in this case. Defendants were only required to use their "best efforts" in disclosures to Manufacturing, and were required to make representations to the "best of [their] knowledge."

In its Opposition, Manufacturing argues that the subject matter of the scope of the APA's representations and warranties in a contract are inappropriate for a 12(b) Motion to Dismiss.

Manufacturing cites *Ritchie v. N. Leasing Sys., Inc.* for this proposition. *Ritchie v. N. Leasing Sys., Inc.* 14 F. Supp. 3d 229, 238, 245 (S.D.N.Y. 2014). *Ritchie*, however, does not involve the terms, representations or warranties of a contract at all, and instead involves factual issues regarding the circumstances surrounding an alleged consumer transaction. *Id*. As such, Manufacturing's reliance on *Ritchie* for this proposition is misplaced, and Manufacturing cites no other law for its position. Therefore, Manufacturing's argument on this subject should be disregarded.

Manufacturing does correctly point out, however, that Section 14(b) of the APA obligates Imaging to change its corporate name following execution of the APA. As stated in the Defendants' Memorandum in Support of their Motion to Dismiss ("Motion"), the APA permits Defendants to continue to use the name AFP Imaging for certain specified purposes. *See* Pl.s Opp. P. 10. Further, the APA does not convey the corporate name to Manufacturing, but only permits Manufacturing to use the name as needed. *See* APA §1. Plaintiff has not specified how Defendants are using this name or how they have been damaged by the supposed use of the name. In fact, Defendants have only been using the name for certain litigation, which is specifically called for in the contract.

Manufacturing's claim that Defendants do not address the allegation that there was a breach of the APA by engaging in business outside the ordinary course in the pre-sale period discounts the reality that Manufacturing's Complaint fails to assert specifically how the Defendants' did not operate pursuant to the ordinary course of business, or how Defendants' actions differed from their ordinary course of business. Indeed, Manufacturing's misunderstanding of the relationships between Imaging and its suppliers has led to this specious claim. As Manufacturing fails to plead this basis for its breach of contract claim against the

Defendants with adequate specificity to move from possible to probable, as required, it is clear that Manufacturing has not met it's pleading burden and that this Manufacturing's breach of contract claim should be dismissed.

### III.   MANUFACTURING'S FRAUD CLAIM IS NOT SUFFICIENTLY PLED

Manufacturing alleges that the Defendants falsified data provided to Manufacturing prior to execution of the APA. The APA, which is incorporated by reference in Manufacturing's Complaint in light of Manufacturing's extensive references thereto within, may thus properly be considered on the present Motion to Dismiss. The APA explicitly discloses the potential valuation issues attendant to the provision of pro-forma documentation on assets that are part of a larger organization with decades of customer relationships, credit history, and benefit from economies of scale.  Further, Manufacturing's insistence that this transaction included virtually of Imaging's assets is plainly contradicted by the terms of the APA, including references made therein to other assets and divisions of Imaging which were not included in the subject transaction governed by the APA.  *See, e.g.* APA §1.   While Manufacturing alleges the Defendants falsified documents to induce it to purchase the assets, Manufacturing does not specify any further details as to the particular incidences of fraud other than its post-purchase valuations and experience purportedly varying from previous due diligence.  Most importantly, Manufacturing fails to allege any facts that would establish justifiable reliance. This is not sufficient for Manufacturing's fraud allegation, and as such, it should be dismissed as a matter of law.

In determining whether justifiable reliance exists in a particular case, a fact finder should consider whether the person making the representation held or appeared to hold unique or special expertise; whether a special relationship of trust or confidence existed between the parties; and

whether the speaker was aware of the use to which the information would be put and supplied it for that purpose. *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264, 652 N.Y.S.2d 715 (1996) (cited in *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001). Such a "special relationship" must extend beyond a typical arm's length business transaction. *Suez Equity*, 250 F.3d 103. The Complaint does not allege any such special relationship nor does it allege any set of facts which would exempt the APA from a typical arms-length transaction.

In addition, the cases Manufacturing relies upon to support its assertion with respect to its fraud allegation in its Opposition are largely mischaracterized therein. *AIG Global Sec. Lending Corp. v. Banc of Am. Sec., LLC*, No. 01 Civ. 11448, 2005 WL 2385854, at *9 n.5 (S.D.N.Y. Sept. 26, 2005), for instance, is cited by Manufacturing in its' Opposition, for the proposition that reasonable reliance may not be determined on a Motion to Dismiss as such an inquiry is highly fact intensive. *See* Opposition at 12. In fact, however, the Motion to Dismiss at issue in *AIG Global*, was premised on reasonable reliance in the context of a particular type of securities fraud provided under §10(b) of the Securities and Exchange Act of 1934. The court therein found that the Plaintiff had sufficiently pled scienter as required under §10(b) of the Securities and Exchange Act of 1934, and only examined the question of reasonable reliance therein. *See, AIG Global Sec. Lending Corp.*, 2005 WL 2385854, at *9 n.5. Further, in *AIG Global* the court had already determined that the Plaintiff had adequately pled the element of scienter as such pleading asserted a basis extending beyond the assertion the general argument that proceeding as alleged in its fraud claim would result in the defendant's receipt of enhanced profitability in general. *Id.* at *26.

Manufacturing also alleges that were not any suspicious circumstances requiring further inquiry upon the facts asserted in the Complaint, and as such, Manufacturing had no further

heightened duty to inquire.  Pl. Opp. P. 13.  Further, Manufacturing states that the thrust of its fraud in the inducement claim is that "Defendants provided financial documentation that appeared completely legitimate so as not to raise any suspicion on the part of Plaintiff."  Pl. Mot. 13.  Manufacturing further states even if it did have a duty to inquire, they did engage in due diligence prior to purchasing Imaging, negating Defendants' argument stating "Plaintiff requested, received and reviewed numerous financial documents and extensive financial information."  Pl. Mot. 13 (citing Hamerman Decl. 20-21, 26-27, 28, 41, 49-50).  Manufacturing further contends that Defendants did not cite a single case dismissing a fraud claim on a motion to dismiss where the fraud claim was predicated on Defendant's provision of falsified documents during the Plaintiff's exercise of due diligence and that we relied totally on cases where parties did not conduct any due diligence.  Pl. Op. 14. (citing *UST Private Equity Invs Fund v Salomon Smith Barney*, 288 AD2d 87, 88, 733 N.Y.S.2d 385 (1st Dep't 2001); *Global Minerals and Metals Corp. v. Holme*, 35 AD3d 93, 824 N.Y.S.2d 210 (1st Dept. 2006) *lv denied* 8 NY3d 804, 863 N.E.2d 111, 831 N.Y.S.2d 106 (2007)).  This is simply not the case.  *See UST Private Equity*, 733n N.Y.S.2d 385 at 443-444 (holding that reliance on materials provided without review of the underlying files is unjustifiable in an arm's length transaction); *see also JP Morgan Chase* 250 F. Supp. 2d 393 at 406 (holding that an independent appraisal of the materials submitted is required for sophisticated businessmen in an arm's length transaction).

Further, Manufacturing cites *Glidepath Holding B.V. v. Spherion Corp* for the proposition that denial of a Motion to Dismiss a fraud claim is warranted where the Plaintiff's due diligence efforts were thwarted by Defendants' misrepresentations.  Pl.s Opp. at 14 (citing *Glidepath Holding B.V. v. Spherion Corp*, 590 F.Supp.2d 435, 459 (S.D.N.Y. 2007)).  In reality, however, a review of the decision in *Glidepath* in fact indicates the Plaintiff performed an

extensive amount of *independent* due diligence - not relying solely on the representations of the other party to the arm's length transaction at issue. *Glidepath Holding*, 590 F.Supp.2d at 444-445. As such, the present case is distinguishable from *Glidepath* and *Glidepath* does not support Manufacturing's contention that Defendants' alleged misrepresentations thwarted Manufacturing's due diligence efforts, exculpating them from any responsibility thereunder. *See, id.*

Further, Manufacturing's only alleged motive in support of the element of scienter required for its fraud claim is that Defendants wanted to sell the assets subject to the APA. It is well-settled law that a company trying to maximize revenue is not a sufficient motive to satisfy the element of scienter. *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Co.*, 75 F.3d 801, 814 (2d Cir. 1996) (company's desire to maintain high bond or credit rating, and thereby maximize marketability of and minimize interest rate on debt securities, is not sufficient motive for fraud); *Acito v. IMCERA Group, Inc.*, 47 F.3d 47, 54 (2d Cir. 1995) (existence of executive compensation dependent upon stock value is not sufficient); *In re Citigroup Auction Rate Sec. Litig.*, 700 F. Supp. 2d 294, 305–06 (S.D.N.Y. 2009) ("Courts have repeatedly rejected conclusory allegations regarding the motivation to earn unspecified fees as a basis for inferring scienter").

Accordingly, Manufacturing has not provided an adequate basis upon which its fraud claim might survive Defendants' Motion to Dismiss, and Manufacturing's fraud claim should thus be dismissed as a matter of law.

## IV.  MANUFACTURING'S UNJUST ENRICHMENT CLAIM FAILS BECAUSE THE APA CONTROLS.

It is true that Federal Rule 8(e)(2) gives plaintiff the right to plead claims in the alternative. *Burton v. Iyogi*, Inc., 2015 U.S. Dist., LEXIS 33809 *39 (S.D.N.Y., 13-CV-6926 (DAB), March

16, 2015) (Under the Federal Rules of Civil Procedure, alternative theories of liability sounding unjust enrichment may only survive when a breach of contract claim is also pled when the contract is in dispute, and fail when the contract is proven. *New Paradigm Software Corp. v New Era of Networks, Inc.*, 107 F. Supp. 2d 325, 329 (S.D.N.Y. 2000); see also *TriState HVAC Equipment, LLP v. Big Belly Solar, Inc.*, 836 F. Supp. 2d 274 (E.D. Pa. 2011) ("Because the parties agree that a valid and enforceable contract exists here, to the extent that TriState seeks to have this court imply a contract under the doctrine of unjust enrichment, TriState's claim must be dismissed."). In the cases cited by Plaintiff, there is at least some question as to the validity of the contact. There is no such question here. The APA controls the relationship and is in fact relied upon by Defendants as their defense in this case. Plaintiff does not allege that it might be invalid or unenforceable. Thus, unjust enrichment claim should be dismissed.

For all the reasons stated in the Defendants' Memorandum in Support of their Motion to Dismiss and this reply brief, Manufacturing's claims against Defendants are precluded by law and Manufacturing has failed to allege facts sufficient to support its claims, and therefore, the Defendants respectfully request that the Court dismiss the Plaintiff's Complaint in its entirety

WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the Plaintiff's Complaint, dated May 3, 2017, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

Dated:      Stamford, CT
               October 6, 2017

THE DEFENDANTS

By:    */s/ Luigi Spadafora*
       Luigi Spadafora, Esq.
       NY No. 2466920
       Brian J. Palmeri, Esq.
       NY No. 4560793
       177 Broad Street, 10th Floor
       Stamford, CT 06901
       Tel.: (203) 328-1200
       Fax: (203) 328-1212
       Spadafora.L@wssllp.com
       Palmeri.B@wssllp.com
       *Attorneys for Defendants*